UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| GLEN D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-cv-00179-MPB-MJD |
| | ) |
| MARTIN O'MALLEY, Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY AFFIRMING MAGISTRATE'S DECISION

Plaintiff Glen D.[1] petitioned the court for judicial review of the Commissioner of Social Security Administration's final decision denying his application for Disability Insurance Benefits ("DIB"). (Docket No. 1). The case was referred to Magistrate Judge Dinsmore for consideration. On November 13, 2023, Magistrate Judge Dinsmore issued a Report and Recommendation concluding that the Commissioner's decision should be reversed and remanded because it fell short of establishing a logical bridge between the evidence and the conclusions. (Docket No. 16). The Commissioner filed a timely objection to the Magistrate Judge's Report and Recommendation, which the Court now addresses. (Docket No. 17). For the reasons that follow, this Court **AFFIRMS** the Magistrate Judge's Report and Recommendation.

**I.　　STANDARD OF REVIEW**

In reviewing the decision of an Administrative Law Judge ("ALJ"), the district court affirms if the ALJ's factual findings are supported by substantial evidence and there are no errors

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The district court will also "determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The court confines the scope of its review to the rationale offered by the ALJ. *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When considering a party's specific objections to a Magistrate Judge's Report and Recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of error of law. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). *De novo* review requires a re-examination of the case with a fresh set of eyes and "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336, F.3d 535, 539 (7th Cir. 2003)). After review, the court is empowered to adopt, reject, or modify the recommendations of the Magistrate Judge. Fed. R. Civ. P. 72(b).

II. **FACTUAL BACKGROUND**

The ALJ's decision finding Plaintiff not disabled followed the required five-step evaluation process in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, "claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 11, 2018, through his date last insured of June 30, 2021." (Docket No. 5-2 at ECF p. 24).

- At Step Two, "[t]hrough the date last insured, the claimant had the following severe impairments: Meniere's disease; sensorineural hearing loss; osteoarthritis status post left total hip arthroplasty; and obesity." (*Id.*).

- At Step Three, "claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*).

- After Step Three but before Step Four, that "claimant had the residual functional capacity to perform light work . . . he can occasionally push and/or pull with the left lower extremity; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can tolerate a moderate noise level as defined in Selected Characteristics of Occupations; and should avoid concentrated exposure to noise and hazards, such as unprotected heights." (*Id.* at ECF p. 26).

- At Step Four, "claimant was capable of performing past relevant work as a vice president and as a president. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* at ECF p. 37).

- Finally, the ALJ concluded that the claimant was "not under a disability, as defined in the Social Security Act, at any time from April 11, 2018, the alleged onset date, through June 30, 2021, the date last insured." (*Id.* at ECF p. 38).

### III.   ANALYSIS

An ALJ must "adequately articulate [his] analysis so that we may follow [his] reasoning." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 776 (7th Cir. 2022) (quoting *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015)). The ALJ may not "merely recite the evidence but [must] connect the evidence to his conclusions," *Steadman v. Saul*, No. 20-CV-190, 2021 WL 1087042, at *3 (E.D. Wis. Mar. 22, 2021), and "explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). A summary of the evidence is not enough. *See Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008).

The ALJ concluded that Plaintiff's alleged symptoms, impairments, and limitations were not consistent with the "objective medical evidence." (Docket No. 5-2 at ECF p. 37). In his report, the Magistrate decided that the ALJ's conclusion was deficient because he did not explain why he believed the medical evidence was inconsistent with Plaintiff's allegations. (Docket No. 16 at ECF p. 5). The Magistrate acknowledged that the ALJ attempted to expound by writing that Plaintiff's "exam and imaging findings; improvement with medication and perfusion treatment; improvement following hip replacement surgery; and ability to walk one to two miles daily, golf, and ride his motorcycle do not support further limitations" than those set in the residual functional capacity. (Docket No. 5-2 at ECF p. 36). However, the Magistrate stated that the ALJ's elaboration still failed to provide the necessary logical bridge between the evidence and the ALJ's conclusions. *Gedatus*, 994 F.3d at 900.

In the Commissioner's Objection, he argues that the Magistrate Judge's Report and Recommendation failed to consider the ALJ's decision holistically and held the ALJ to a standard that was too high. (Docket No. 17 at ECF p. 1). The Commissioner reiterates his original reasoning for the Court, separating it into three categories: improvement with medication and perfusion treatment, improvement with hip replacement, and evidence of golfing, motorcycle riding, and "extensive" walking. The Court will examine these three categories in turn to decide whether the ALJ sufficiently connected the evidence to his conclusions and addressed contrary evidence.

A. **Improvement with medication and perfusion treatment**

The ALJ concluded that because the Plaintiff improved with medication and perfusion treatment, limitations beyond those included in the residual functional capacity were not warranted. (Docket No. 5-2 at ECF p. 36). The ALJ did not specifically connect this conclusion

4

to Plaintiff's vertigo or any of his specific conditions. However, in the residual functional capacity section of the decision, the ALJ summarized evidence of Plaintiff's doctors' notes discussing his vertigo. The ALJ wrote that on November 5, 2020, Plaintiff's doctor noted that Plaintiff had not had further vertigo episodes since his March 2020 perfusion. (*Id.* at ECF p. 34). The ALJ acknowledged that despite the improvement with vertigo, Plaintiff testified that severe issues with balance, dizziness, and ear ringing, pressure, and fullness persisted. (*Id.* at ECF pp. 28, 67). On May 6, 2021, the physician noted that Plaintiff's long-lasting issues with balance had slowly improved, and that he was walking one to two miles daily, playing golf, and riding his motorcycle. (Docket 5-2 at ECF p. 35; Docket 5-7 at ECF p. 500).

While the ALJ thoroughly summarized the evidence, he did not include any analysis connecting the summaries of doctor's notes and Plaintiff's testimony to his conclusion that Plaintiff improved with medication and perfusion treatment. (Docket No. 5-2 at ECF p. 36). As stated previously, to provide a logical bridge, an ALJ must "adequately articulate [his] analysis," *Jarnutowski*, 48 F.4th at 773, and "explain why contrary evidence does not persuade." *Berger*, 516 F.3d. at 544. Here, the ALJ did not analyze the evidence and did not explain why the contrary evidence of Plaintiff's continued symptoms was not persuasive.

In the Objection, the Commissioner argues that if this Court reads the ALJ's decision holistically, it will see the required analysis in the ALJ's discussion of the evidence. (Docket No. 17 at ECF p. 5). However, the issue here is not that the ALJ's analysis isn't conveniently placed near his summaries of doctors' notes or his overall conclusions. Rather, the issue is that the ALJ's analysis is limited to insufficient, general statements. These statements were catalogued by the Magistrate Judge in his Report and Recommendation. (Docket No. 16 at ECF pp. 5, 6). In each of the statements, the ALJ rephrases his conclusion that the evidence presented was not

consistent with the claimant's alleged symptoms but did not analyze that evidence. (Docket No. 5-2 at ECF pp. 28, 29, 36, 37).

The ALJ also wrote that Plaintiff's "exam and imaging findings" did "not support further limitations." (Docket No. 5-2 at ECF p. 36). The ALJ did not explicitly connect this conclusion to Plaintiff's Meniere's disease. However, the ALJ did thoroughly paraphrase Plaintiff's doctor visits concerning Meniere's. On January 30, 2020, Plaintiff's doctor noted that he has an "occasional mild flare-up [of Meniere's]," (Docket No. 5-7 at ECF p. 444). On January 28, 2021, he noted that Plaintiff's Meniere's "has been pretty good," (Docket 5-7 at ECF p. 456; Docket 5-2 at ECF p. 35), and on February 1, 2022, he noted that Plaintiff communicated that "[h]e has not really been having any problems." (Docket No. 5-7 at ECF p. 467; Docket 5-2 at ECF p. 35). The evidence on this subject seems to support the ALJ's overall conclusion that "the claimant's allegations regarding the symptoms of his impairments and his resulting limitations are not entirely consistent with the objective medical evidence." (Docket 5-2 at ECF p. 37). However, the ALJ did not provide any analysis connecting his conclusion to the notes he summarized, and thus failed to provide the necessary logical bridge.

B. **Improvement with hip replacement**

In his decision, the ALJ concluded that Plaintiff's improvement with his hip replacement undermined his report of significant restrictions sitting, standing, and walking. (*Id.* at ECF p. 36). The ALJ also paraphrased doctors' notes from checkups with Plaintiff about his hip. On February 6, 2020, the doctor noted that Plaintiff's incision from the surgery was healing well, and that the patient had good strength and had made excellent progress. (*Id.* at ECF p. 33). On December 2, 2020, the doctor noted that Plaintiff's x-ray's demonstrated excellent alignment of his left total hip implants, that he had no reproducible groin pain, and recommended follow up in two years.

(*Id.* at ECF p. 35). Further, at appointments from January 28, 2021, to February 1, 2022, Plaintiff's doctor noted that the patient shared that his "joints had been fine." (*Id.*).

The ALJ also paraphrased Plaintiff's contrary testimony from the hearing, where Plaintiff stated that he still experienced right hip pain and that it was extremely uncomfortable to stand for more than thirty minutes, that it locked up when he sat for more than thirty or forty-five minutes and that he expected his doctor would want to replace the right hip soon. (Docket No. 5-2 at ECF pp. 28, 70). The ALJ never stated why he found this contrary evidence unpersuasive. He simply said that after "careful consideration," he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (*Id.* at ECF p. 28). Again, the ALJ provided no analysis of his own, and did not go beyond summarizing the evidence to providing a logical bridge between the evidence and his conclusion.

### C. Evidence of activity

In his decision, the ALJ stated that Plaintiff's "ability to walk one to two miles daily, golf, and ride his motorcycle" were not consistent with the symptoms alleged. (*Id.* at ECF p. 36). In his Objection, the Commissioner argues that this explanation alone was a sufficient articulation of the ALJ's reasoning for "discounting Plaintiff's subjective reports." (Docket No. 17 at ECF p. 4). It may be true that this activity level is inconsistent with the Plaintiff's complaints. However, the ALJ must support his conclusion by engaging the evidence. Because this statement does not articulate any analysis by the ALJ or address contrary evidence, it is insufficient.

### IV. CONCLUSION

Having reviewed *de novo* Magistrate Judge Dinsmore's analysis and conclusions set forth in his Report and Recommendation, the Court **AFFIRMS** the Magistrate Judge's Report and

Recommendation and **REVERSES** and **REMANDS** this case for further proceedings consistent with this decision.

    IT IS SO ORDERED.

Dated: February 15, 2024

_____
Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.